Good morning. Jeff Jones for the appellant, Ryan Lynn. Could you keep your voice up, please? Oh, yes. Jeff Jones for the appellant, Ryan Lynn. Thank you. If I could reserve three minutes for rebuttal. You may, but you'll have to help keep track of your own time. I will. It's the full time. Thank you. Several weeks ago, this Court decided United States v. Wright, a decision that addressed a different child pornography statute that's part of the same congressional act, and it contains an identical jurisdictional element to the statute that's at issue in this case. And the Court held that the contraband item, the material prohibited by the statute, must be shown to actually cross a state line. The contraband item in this case is a visual depiction of child pornography. The visual depiction is defined to include data stored by electronic means. And that means, in this case, the digital image files found on the defendant's computer are the prohibited material, and those digital image files must be shown to cross a state line. At trial, the government's sole theory to establish that element of the offense was that the original movie that the defendant possessed a copy of was made in another state some number of years ago. That was done with two different movies. Given the holding in Wright, that it's the contraband material that must be shown to cross a state line, the government's theory, that theory by the government, can only be sufficient if the original video is considered the same visual depiction as the copy possessed by Mr. Lynn and all copies that exist on the Internet. It would have to be the same visual depiction for that to be considered the contraband that was actually possessed by Mr. Lynn. Well, in Wright, the statute required transportation, correct? Yes. And here it's receipt. Oh, you're talking about the element in Wright? Yes. Yes, that's true. That's true. So why isn't that a crucial difference between Wright and this circumstance? Well, in Wright... In terms of your theory about... Well, I'm saying in Wright. I don't think Wright's directly on point. It is a different statute. It also has the right, the statute in Wright also has a mens rea element. It has to be the transportation has to be knowing, whereas in this case it doesn't. The similarity in Wright is the jurisdictional language, the geographical requirement is exactly the same. And in the statute in Wright and in this one, the way that statute has been interpreted in Wright, it's the contraband item that must be shown to cross the state line. I think Wright... So under your theory, you would think everyone would have to show that it was actually digitized and that the digitized version crossed state lines as opposed to generically showing that the depiction occurred somewhere else and then was transported? Yes. Well, it wasn't necessarily so that even if you digitize it, it's got to cross state lines at some point. Yes. But that, the visual depiction possessed by the defendant must cross the state line. That's the position. If I can draw an analogy, if this was a VHS tape of the same original movie and there's a million VHS tapes of that movie in the world, under the government's theory, the fact that any one of those, if they're all the same visual depiction, the fact that any one of those exists in another state would satisfy the jurisdictional element and it would essentially be a nullity. In that non-Internet example, if the defendant possessed a VHS tape with this pornographic video on it, the government would need to show that the VHS tape, that the defendant was found to possess, had been shipped into California. Not necessarily that he, obviously not that he did it or knew that it was shipped, but just that that particular item that he's, that the statute prohibits him from possessing or receiving, had crossed the state line. Not simply that the original video was of an Italian movie, say, and one of several, you know, thousands, et cetera, copies of that movie. So it doesn't, that requirement doesn't seem to be in the statute, does it? In other words, the statute doesn't reform to the same, doesn't talk about the same form of media, does it? The visual, the statute defines a visual depiction to include, to include the media in which a copy of the image is, for instance, undeveloped film or a electronic, it doesn't use the term digital data file, but it says electronic data stored by electronic means. And that's the, therefore the contraband includes the medium as the statute defines it. It's hard to see under your theory of the case how the government could ever win a case, could ever show interstate transportation. How do you suggest the government could possibly prove that the, that the, go ahead. I think you understand my question. I do, I do, I do. I think that, I think that there are, there are a number of ways. For instance, given the evidence in this case, given the, there was much evidence about the software they used, the NCASE software, which shows, they look at LimeWire and, which is the, you know, the file sharing network that was used here. And it gives them a list of the, the, the files that are being shared, which they know, they can, they can identify those. And the IP address, which in every single case they can correlate, they can correlate to a, to a geographic location. Additionally, separately, I think that Wright leaves open, that one could show, based on the, based on the nature, in this, based on the nature of the Internet, in this case, based on the nature of the Internet and the nature of these file sharing networks, that, and you're dealing with some number of files, that beyond a reasonable doubt, one of those files must have, must have crossed the state line. That's a theory that could, I think that if a jury was presented with that theory and heard evidence of the probability that all, that the number of files that the defendant possessed had all come from within California, given the nature of LimeWire, a reasonable jury could conclude that the jurisdictional element was met, and that would certainly survive a sufficiency challenge. No question, in my mind. Go ahead. And any of the, the. Counsel? Yes. I'm going to interject a question on that. So would the government then have the burden of giving expert testimony in any case where they have these images on a computer, showing which IP address the images came from, to show that definitely that they came from a different state? I, I believe so under that, under that theory, yes. And then do you, why do you think that's a reasonable theory for the Congress? Do you think Congress would have intended that? Or do you think it's just the implication of the congressional language? I think, I think that relying on this Court's decision in Wright, its discussion of the, when the answer to your question is, is yes, I do think, I do think that Congress intended in this version of the statute, which has been amended, I do think that Congress intended that the contraband item possessed by the defendant cross the state line. And I think the, when the statute was amended, it, it was intended to significantly expand the jurisdiction and reach more conduct. And I think that that may reflect a paradox that while the Internet makes everything more international, at the same time, it can make it more difficult to prove that something traveled, traveled from one place to another. And Congress addressed that when it, I mean, the, the amendment in the 2007 amendment was enacted in October of 2008, specifically was designed to address the problem of Internet crimes in this arena.  The amendment was for precisely that purpose, to address that, that shortcoming. And that's why they expanded the statute. And this is precisely the theory that I'm, the theory that the government used in this case was, was rejected by the, by the Tenth Circuit in both Wilson and Schaefer. And I believe it's, I believe those cases are indistinguishable to the, as far as the facts in this case. And obviously, they're not, not binding on this Court. But, and I do not believe there's any court, any federal court has, has found this theory that the government, to my knowledge, has found this theory adequate. The theory of originate, of where the image, image originated, constituting proof that the, the copy possessed by the defendant crossed the state line. And if there are no questions, I'll, I'll look for a minute. Okay. They don't appear to be in. Thank you. Good morning, Your Honors. David Gappa for the United States. The government's position is that the district court did not err in finding that the Rule 29 motion was denied and that there was sufficient evidence that at least one visual depiction had traveled in interstate or foreign commerce. And the Court's decision earlier this month in the Wright decision does not control the outcome of any issue in this case, particularly the issue related to the jurisdiction. The government has already outlined its argument in the 28J letter. And I believe that Judge Thomas has seized on the appropriate analysis in distinguishing the Wright decision, which, as noted. Well, I was just asking questions. I haven't seized on anything yet. Well, but I, I believe that the, the question is focused in the correct area, and that is that the statutes are different. And the focus, as noted by the Court in the Wright decision, is on transportation of images, which, as the Court there noted, the actus reus is the movement of the images, whereas here it's the receipt or distribution of the images. And the jurisdiction in the statute at issue in this case attaches to the image. So it is sufficient in the government's view that the government show that the image has been mailed, transported, or shipped in interstate or foreign commerce. And we did that with more than sufficient evidence in this case by having not just one but two different witnesses come in. And in one instance, the witness testified that the images had originally been produced in the State of Georgia and then had been mailed to the United Kingdom, so therefore necessarily those images had traveled through interstate or foreign commerce. And when you say the images, what, what are you talking about? The images. The image or the other image. Well, the, the visual depiction is what the statute at issue here refers to, visual depiction. And counsel has focused on one aspect of the definition of visual depiction. Visual depiction is defined in Section 2256 of Title 18 to include data capable of being converted into a visual image. But it's not limited to that. And there was a similar issue, an argument, and resolution in the Hawkings case that this Court decided in 1997. And the argument there had to deal with whether or not the medium or the format of those images fit within the statute. And the Court there decided that the way the statute was written and then amended did not preclude the format at issue in that case. And it's similar here. The defense would read this too narrowly and skip over the part of the statute that says includes. It is not limited to that definition. So the image has traveled in interstate or foreign commerce when it has gone from Georgia to the United Kingdom. And obviously necessarily, at least if not the original, and probably not the original, but a copy of that has then ended up in California. The same analysis, I think, applies with the images that were produced in the state of Washington. Counsel, I'd like to ask you a question, please. Yes. Let's assume we accept the government's position on the commerce element. So there was jurisdiction. Why wasn't there a, or why isn't there a double jeopardy problem with convicting him for both receipt and possession in light of the testimony of the Supreme Court's Blockburger case and our Ninth Circuit case following that at Davenport? Yes, Your Honor. The Davenport case, as Your Honor well knows, having written that decision, found that in some situations that possession is a lesser included offense of receipt. But cases have since then decided that it is not in every case that possession is a lesser included offense. And I think that you need to always look at the facts. And here the facts are distinguishable from Davenport. In Davenport, there was completely overlapping conduct, and the receipt of the images was the exact time frame of the possession of the images. So there was no distinction in time. And also, there was no distinction in terms of what we had in this case, retention of the images. And so the way this case was charged, unlike in Davenport, there was a period of approximately four months from January through April of 2008 where the defendant received the images, and then separately in the possession charge, the conduct was possession of one or more matters on approximately May 23rd of 2008, which is more than one month after, at least more than one month after the receipt had been completed. And so it's important to always look at conduct. And there's different conduct here, and it's conduct that is being punished, and the statutory scheme addresses conduct. And it's not just the elements of the offense. And one analogy that we've pointed out is that, for instance, although receipt and possession of a firearm may be multiplicitous, under some facts it wouldn't be. So, for instance, if you possess a shotgun on Monday and a rifle on Friday, those are facts that would distinguish and justify two separate offenses. So that's why the government sees that under these facts, as opposed to the facts in Davenport, the convictions are not multiplicitous, and therefore there's no double jeopardy issue. The other issue that the defendant raised is the vulnerable victim enhancement. The government believes that that is squarely controlled by this Court's prior decision in the Holt case, which also I believe Judge Gould is very familiar with having written that decision. And although the focus in the argument is that there was a narrow holding in that case, that I think goes beyond what the case represents. In other words, the Court there dealt with a situation where the probation office examined the facts in a case where the defendant was convicted for possession of child pornography, and the probation office recommended the enhancement for vulnerable victims under 3A1.1. That was applied. The district court believed it was an appropriate enhancement, and the Ninth Circuit upheld the application of that enhancement. And the argument, although focused on double counting, obviously by necessity would have acknowledged that the enhancement was appropriate in the first instance and then said that it's not inappropriate that it's applied in addition to this other enhancement. So it doesn't mean that it's inappropriately applied in the first instance. So we don't believe that there is a valid reason, nor could this panel overturn the prior decision in the Holt case. Unless there are any other questions of the panel, the government will submit based on a briefing. Thank you. Thank you. Your Honors, I don't disagree with what counsel for the government said about the visual depiction not being limited to the digital data file. For instance, these original videos filmed in Georgia and Washington, no doubt those, assuming they're filmed on cellular or what have you, no doubt those are visual depictions. They're simply not the same visual depiction. And I'd refer to the common understanding of what a visual depiction means. If you had a painting, a Picasso, and you made prints of it, each print would be a visual depiction of the original. They aren't all the same visual depiction. If they are regarded as the same visual depiction, if the original and all the copies that exist are the same visual depiction, the government wouldn't even have to show where the original was made. The government could merely show, the government could actually download a copy off the Internet in Nevada and show that, well, a copy exists in Nevada and a copy exists in California, and therefore, the visual depiction has traveled across the state line because there's millions of visual depictions that essentially the defendant is, as far as the jurisdiction element, the defendant is being held to possess all of those. Only one of them has to cross the state line. If you don't require the one that he possessed, in this case in the form of a digital data file, actually crossed the state line. The last point regarding that Claim 1 is, in this Court's decision in Lacey and the subsequent decision in Guagliardo, these address another prong of the possession statute that's at issue here in Count 2, that producing an image is a prong that wasn't used in this case, but it's part of the same statute. And in those cases, they both hold that when you, when something's downloaded in a digital format, the download produces a new image. It produces something new. It's a new image. And respectfully, I suggest the government's trying to have it both ways here. Under the production prong of the same statute, they're saying this is something new. This is, this process is creating a new, a new, a new piece of contraband because that's required for the statute. And under the, under the same, under the first prong of the same statute, they're saying that it's exactly the same thing. And I, I submit that it can't, it can't be both. If I could, if there are, if there are no questions about the first claim, I could briefly address, address the next two. The double jeopardy, the most recent case addressing this, there's essentially three. United States v. Shales is completely indistinguishable, completely indistinguishable from this case. And there is no focus on the conduct. The focus is on the indictment and, therefore, what the jury's verdict deems to be found to be beyond a reasonable doubt. And when you look at the indictment in this case and compare it to Shales, the case of Shales is completely on, on point to this case, in my opinion. The last point, the vulnerable victim, the whole case, I, I, there is an unequivocal statement there that goes against that claim. However, I, I submit that is dicta because that is a double counting case and they weren't addressing the claim whether the vulnerable victim enhancement is even applicable. And there's a long line, there's many, many cases in this Court, out of this Court. Rising Sun is one. I've cited them in my briefs. That hold the vulnerable, and the commentary from the guidelines as well, which is dispositive, that the vulnerable victim enhancement has to facilitate the defendant's offense conduct, not facilitate, in this case, it facilitated someone else's offense conduct. His offense conduct was receiving images and the vulnerability of the victims did not facilitate that. There's no, put it another way, there's no, there needs to be some kind of causal nexus. The guidelines required in this case, a causal nexus between the, the defendant's offense conduct, what he did, and the vulnerable status of, of the victim, whatever that is. Counsel, counsel, let me ask you a question on that. You know, why isn't the demand, the demand side of child pornography cases, you know, why isn't that a, the fact that that encourages production, that demand encourages production, why isn't that a sufficient nexus? The victims, I believe the victims in this case are the children whose, whose images were in the videos he possessed. Your, what you're saying I think would require that the victim of the offense be considered children who have not yet been victimized. And they would be young. That's not what I'm saying. Actually, I'm not saying, I'm asking, I'm asking you a question. Why isn't the fact that people demand pornography, why doesn't that cause harm to the victims who are the subjects of the child pornography? Because as long as there's demand, people are going to keep making these, these kinds of videos. And when the kids get older, they'll get new kids. I. Why isn't the, the fact that the demand to see these contributes to the victimization of the children, why shouldn't that be sufficient? The victimization of the children that were portrayed in these, in these images, if I understand you. I think, I think they are, I think it does harm them. I don't think there's any question that it harms the actual, that the demand harms the actual subjects of these, of these images and these videos. However, when the, in this case, when the defendant committed this offense conduct, the, the victims that were harmed in, in, in what you suggest and that by demand, that demand, they're adults. So to say that they were vulnerable by, by virtue of their age is a bit of a non sequitur in my, in, I believe. They're not children anymore. They were children when they were harmed by the production of these images, not when, not when my client downloaded the images off the Internet. Thank you. Case just argued is submitted for decision.
judges: Schroeder, Thomas, Gould